GEORGE BARNETT *et al.*, Appellants, *v.* GEORGE SMITH, Appellee.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

Where it is agreed between A. and B. that B. shall enter into business with A., and receive a specified sum per annum as his share of the profits, upon condition that B. shall devote his whole time to the business, they are to the world copartners ; and the sureties to a bond, conditioned for the faithful conduct of a servant, who was employed by A. before his association with B., were held to be released as against A. and B., who continued the servant in their joint service, such servant having become delinquent while in such joint service.

THIS was an action of debt. The declaration is as follows :

For that whereas on the 19th day of April, A. D. 1850, the defendants made their certain bond or writing obligatory in the sum of five thousand dollars, lawful money, to be paid to George Smith & Co.,—the condition of said bond being such, that if the said Thomas Hamilton Noble (one of the appellants herein,) should well and truly perform the duties assigned to, and trust reposed in, him as teller of said firm, and as long as he should continue in that capacity; or if the said Thomas Hamilton Noble should well and truly perform the duties of every other office, duty, or employment, to which he might be appointed in the office of said firm, and also such other duty or duties as might from time to time be assigned to him by said firm, or by the managing clerk thereof, or undertaken by him in relation to the said firm, then said obligation should be void; otherwise to remain in full force and virtue. That afterwards the said Thomas Hamilton Noble entered upon the duties of teller of said firm of George Smith & Co., and continued in the discharge of such duties for the space of four years and upward; and that on the 10th day of October, A. D. 1854, the said Noble, while in the discharge of the duties of the office of teller, abstracted and retained from the funds of said George Smith & Co. the sum of $9,579.93, which sum it is alleged was the property of said plaintiff; by means whereof said defendants became liable, &c., to pay said sum of $5,000; yet that said defendants have not paid said sum of $5,000, although, &c., but have hitherto neglected, &c.; to the damage of said plaintiff, of five hundred dollars, and therefore he brings suit.

The defendants, Barnett and Armour, filed three pleas :

1st. That Thomas Hamilton Noble did not, while in the discharge of the duties by him to be performed, in said writing obligatory mentioned, abstract or retain from the funds of the plaintiff the sum of money in said declaration mentioned, or any other sum of money; concluding to the country.

Upon this plea issue was joined.

2nd. That said Thomas Hamilton Noble, at the time of the execution and delivery of the writing obligatory in said declaration mentioned, was employed by the said plaintiff for the term of three years from the 19th day of April, A. D. 1850, and no longer, to perform the duties in said writing obligatory mentioned, and that said Noble did for that time well and truly perform and keep all and singular the articles, clauses, payments, conditions and agreement in the condition of said bond mentioned, and that before any default of said Noble, or any liability of said defendants on said bond had been incurred, the time for which said Noble was employed had elapsed and expired, and this the said defendants are ready to verify, &c.

To this plea there was a general demurrer, which was sustained by the court.

3rd. That before and at the time of the execution and delivery of the writing, the said plaintiff was trading and doing business as a private banker, under the name and style of George Smith & Co., and was the sole and only person composing the said firm of George Smith & Co., and that the said service in the condition of said bond mentioned, was to be performed by said Thomas Hamilton Noble to the said plaintiff in his said business as a private banker; that said Noble, during all the time he continued in the service of said plaintiff alone, did fully perform all things in the condition of said bond required of him; nor did he during that time abstract any sum of money from the funds of said plaintiff. But said defendants aver that on the 19th day of April, 1852, and before any default had occurred, the said plaintiff associated with himself in the said business, a partner, one Elisha W. Willard, and that while said Willard was associated with the said plaintiff as a partner in said business, the said default of said Noble occurred. And that after said Willard was associated with said plaintiff as a partner as aforesaid, the said Noble served the said firm, and did not serve further the said plaintiff alone, and at the time of said default was in the employ of said plaintiff and said Willard, and not of said plaintiff alone; and this the said defendants are ready to verify.

To the defendants' third plea the plaintiff replied : that on the 29th day of November, 1851, he and the said Elisha W. Willard made and entered into a covenant and agreement, setting forth that on said 29th of November, 1851, said defendant was and before that time had been engaged in the general business of banking and exchange, in the city of Chicago, under the name, style and firm of George Smith & Co., and that said party of the second part (the said Willard) being desirous of becoming a member of said firm, it was thereupon agreed between said parties,

1st. The said party of the first part hereby admits and receives the said party of the second part as a member of the firm of George Smith & Co.

2nd. The business to be continued and carried on in the city of Chicago, in the name, style and firm of George Smith & Co., and to be a general banking and exchange business, of the same kind and character as has been heretofore done by said party of the first part.

3rd. The partnership hereby entered into is to continue from the first day of December, A. D. 1851, until the first day of December, A. D. 1853.

4th. The capital stock used in said business is to be furnished by said party of the first part.

5th. The said party of the second part is to devote his whole time and attention to said business, and is not to use the name and style of said firm for any other purposes, except such as regularly belong to said business aforesaid.

6th. Said party of the second part is to have and receive from said business the sum of three thousand dollars per annum in full for his services, and in lieu of all other profits or claims upon said party of the first part, the said firm or the business thereof.

7th. The said party of the first part hereby guarantees to the said party of the second part, the payment of the sum mentioned in article number six.

That afterwards, and on the 1st day of June, 1853, by an agreement thereunder written, said articles of copartnership were by said parties " extended for three years from and after they would expire by limitation, upon the same terms, except that the compensation provided for in article six, be from the date hereof $5,000 per annum."

And it is averred in said replication that said plaintiff and said Willard transacted business together only as provided in said agreement; and so the said plaintiff says, that the money so abstracted was his money solely, and that notwithstanding said articles of agreement, was abstracted by said Noble while in the service and employ of said plaintiff alone; and so the plaintiff says, that by reason of the premises, he and the said Willard have at no time been partners as is alleged in said plea. Without this, etc., with verification.

To the replication of the plaintiff to the defendants' third plea, the defendants rejoined three several rejoinders:

1. That the said plaintiff, from and after the entering into said articles of agreement, in said replication mentioned and set forth, at all times represented and held himself out to said defendants and to the world at large, as a partner of the said

Willard, as in the said plea alleged, and they, the said defendants, had no knowledge or information of the said articles of agreement, in said replication mentioned and set forth, with verification.

2. That the said plaintiff ought not to be admitted to reply the said replication to said third plea, as to so much thereof as alleges that the said money abstracted as aforesaid, was the property of said plaintiff, and not at any time that of said Willard and said plaintiff; and that the said plaintiff and the said Willard have not at any time been partners as private bankers, as alleged in said third plea, because said defendants say that on the 9th day of July, A. D. 1855, the said plaintiff and the said Elisha W. Willard, as partners, sued the said Thomas Hamilton Noble, in the Cook county Court of Common Pleas, for the same identical money mentioned in said declaration, and afterwards, as such partners, by the consideration of said court, recovered judgment of the said Thomas Hamilton Noble for the same, together with costs.

3. That the said plaintiff ought not to be admitted or received to reply said replication to the defendants' third plea, as so much as sets forth said articles of agreement, because said plaintiff, at all times, after entering into the same, represented and held himself out to the said defendants and to the world at large, as partner of said Willard; and that said defendants have no knowledge or information of said articles of agreement, in said replication mentioned and set forth.

The plaintiff demurred generally to each of the rejoinders, and the demurrer was sustained by the court.

Trial of the issue on the first plea was by the court, without a jury.

On the trial the plaintiff called James Alexander, who testified that Thomas Hamilton Noble, one of the coöbligors in the bond sued on, was teller of the firm of George Smith & Co., and that while in said office and in the employment of said plaintiff, he abstracted and retained the sum of $9,871.73, the property of the plaintiff, which he, said Noble, still owed to plaintiff. The default of Noble, in abstracting and retaining said money, was not discovered until after he went away, which was in July or August, 1854.

The defendants then introduced in evidence the record of a judgment in an attachment rendered by the Cook county Court of Common Pleas, in favor of the plaintiff and Elisha W. Willard against Thomas Hamilton Noble for $9,873.71 damages. The defendants also introduced in evidence the record of a decree in a suit in chancery, rendered by the said court, wherein the plaintiff and said Elisha W. Willard were complainants against

Thomas Hamilton Noble et al. for the sum of $9,873.71, and directing certain property to be sold for the payment thereof. It was admitted that the money mentioned in the testimony of Alexander was the same money in the above suits in favor of Smith & Willard. This was all the evidence in the case. The court found the issue for the plaintiff. The defendants moved for a new trial, which was overruled by the court, and exception taken thereto. Judgment was rendered for the plaintiff for $5,000 debt and $5,000 damages, the debt to be discharged on payment of the damages and costs.

The errors assigned are : 1, in overruling the defendants' motion for a new trial; 2, in sustaining the demurrer to the defendants' second plea ; 3, in sustaining the demurrer to the defendants' rejoinders.

This cause was heard before J. M. WILSON, Judge, at the vacation term of the Common Pleas, in April, 1856.

HIGGINS, BECKWITH and STROTHER for Appellants.

BURTON and WINSTON for Appellee.

CATON, J. The question presented by the pleadings in this cause is this: George Smith was doing a banking business under the name of George Smith & Co. And, as such, employed Noble as his teller in the bank. Barnett and Armour executed the bond sued on, to Smith, by the name of George Smith & Co., conditioned that Noble should conduct himself with integrity, &c., in his said appointment, and in any other employment of the obligee. Smith afterwards entered into a contract of copartnership with Willard, in the said banking business, by which it was agreed that he should be a partner in the firm of George Smith & Co., and that Smith should pay him three thousand dollars per annum for his share of the profits in the business, and that he should devote his entire time to the business of the firm. After its expiration this contract of copartnership was renewed, increasing the amount to be paid to Willard, for his share of profits, to five thousand dollars per annum. During all this time, Noble was continued as teller in the banking house, and after Willard was admitted as a partner with Smith, Noble abstracted of the funds of the house nearly ten thousand dollars, for which he failed to account. Smith and Willard sued Noble for this money and obtained a judgment against him, but failing to obtain satisfaction, Smith brought this action against the obligees in the aforesaid bond to him. Barnett and Armour knew that Willard had been admitted as a partner in the house, but did not know of the provision of the contract by which Wil

lard was to receive a stipulated sum in lieu of profits. The question is, whether they are liable for the misconduct of Noble, after Willard was admitted to the partnership. It was freely admitted, that if Willard had been admitted as a general partner, they could not be liable; but it is insisted that by the contract between Smith and Willard, he did not become in fact and in law a partner in the house; that he was an employee of the house upon a stipulated salary, entitled to no profits and liable to no losses. If that were so *inter partes,* it would not follow that such was Willard's position as to the public or third persons. But as between themselves their relations were not those of master and servant. For instance, Willard was bound to devote his time and services to the business of the house, and by that, he was bound to do so when able, but suppose he was sick for a day, a week, or a month, or even a whole year, if he was a clerk on a salary, the salary would stop whenever the services stopped; but as partner his share of the profits did not stop, nor did his stipulated compensation which he was to receive in lieu of profits. As between themselves then, a different degree of obligation is imposed upon Willard to render the service specified. Again, he could not sue Smith for work and labor, as he could were he at service for a salary. Should he sue Smith for the stipulated sum, he would have to count specially for the price of his share of the profits and not for the services. He did not serve Smith alone, but himself and Smith as partners. As between themselves, their relations differ from those of master and servant. But that is a matter of very little moment in the present inquiry. The question is, what is their position as regards the public and third persons? To that, there can be but one answer. They are partners. The agreement, set out in the pleadings, declares them to be partners; and as such they held themselves out to the world, by carrying on business in the partnership name. The legal title to all the partnership effects was in Willard and Smith, and all actions to collect their debts had to be prosecuted in their joint names, and both were alike liable for the debts of the house. Willard was just as liable as Smith for all losses, and should Smith fail to meet them, he would be obliged to do so, if necessary, out of his private estate, and look to Smith for indemnity on the contract. In case of the death of Smith, Willard, I apprehend, would have the right to close up the business of the firm as surviving partner, in defiance of Smith's personal representatives.

The money then, which Noble abstracted, was not Smith's, but it belonged to Smith and Willard. Smith alone is the obligor in the bond, and the sureties only undertook for the principal, that he should act with fidelity to Smith, when in his employ

alone. They never undertook to answer for him when in the
employ of Smith and Willard, or of any other person than Smith.
While in Smith's employ, self-interest would prompt them to
carefully watch the conduct of Noble, but when he left Smith's
employ and entered into the service of Smith and Willard, they
were no longer called upon to look after him, for they had a
right to consider that they were no longer answerable for his
conduct. After that, scrutiny into his conduct would have been
officious, if not impertinent. We think the rejoinders were good,
and that the replication was bad, so that the demurrer should have
been overruled as to the rejoinders, but sustained to the replication.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*