CYRUS DUPEE

*v.*

E. NELSON BLAKE, for use, etc.

*Filed at Ottawa November 29, 1893.*

1. SURETY—*liability for acts of firm after a change in same.* A surety who guarantees the performance of a condition by a partnership firm can not be held liable for the default of the firm after it has been changed by the addition of a new member.

2. The rule is, that if a surety engages for an individual, the engagement is understood to extend to the acts of that individual alone, and will not continue if he takes in a partner in the business to which the suretyship relates.

3. SAME—*for a firm—released by change of firm.* A surety who guarantees that a firm, composed of particular individuals, will do certain acts or discharge certain duties, can not be held liable where there is a change in the firm, although the firm name be not changed.

4. As the surety's liability is *strictissimi juris*, and can not be extended by construction, his guaranty to a partnership is extinguished if any partner is afterwards taken into or retires from the partnership, unless it appears, from the terms of the instrument, that the parties intended the guaranty to be a continuing one, without reference to the composition of the firm.

5. SAME—*release of principal reserving remedy against surety.* It has been held that where a creditor releases the principal debtor, and at the same time and in the same instrument reserves his remedy against the surety, the latter will not be released. In such case the release will be regarded as a covenant not to sue the principal, and the surety retains his right of contribution from the principal.

6. So where a co-obligor is released with a provision that the rights of the creditor against the other co-obligors shall not be affected, the latter will not be discharged, because the release is treated merely as a covenant not to sue, and the right of contribution is preserved. But in order to preserve the creditor's right of action against a co-obligor, a surety, the latter must be a signer of the same obligation, and not bound by a separate writing.

7. Where a partnership firm borrowed $20,000, and gave its note therefor, secured by certain warehouse receipts issued by the firm, and the bank, in consideration of the conveyance to it of lands and certain other contracts, released the firm from liability on the note, but reserved the right to sue a surety on a bond given by the firm

guaranteeing their performance of the duties as warehousemen, it was *held*, that the release of the makers of the note was a release of the surety on the bond.

8. SAME—*release of collaterals pledged as security.* Where the payee of a note takes real estate and contract rights in full settlement and satisfaction, this will operate as a release of warehouse receipts which were pledged as collateral security for the note. The extinguishment of the debt, in such case, will operate as a waiver of damages in respect to the warehouse receipts pledged as collateral security.

9. PLEADING—*carrying demurrer back.* A demurrer to a plea submits the whole record to the consideration of the court, and judgment must be given to the party who, on the whole, appears entitled to it.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This is an action of debt brought by E. Nelson Blake for the use of the Metropolitan National Bank of Chicago, the appellee herein, against Cyrus Dupee, the appellant, upon a joint and several bond, dated January 31, 1884, in the penal sum of $5000.00, executed by J. C. Ferguson & Co., a firm then composed of N. M. Neeld, J. C. Ferguson and E. W. Ferguson, as principals, and George D. Baldwin and said Cyrus Dupee, as sureties, to the said E. Nelson Blake, President of the Board of Trade of the City of Chicago, or to his successor, or successors in office, "for the use and benefit of any person or persons entitled to receive the same." The defendant filed three pleas which were demurred to by the plaintiff. The demurrer to the pleas was sustained, and the defendant electing to stand by his pleas, judgment was rendered for the plaintiff, which judgment has been affirmed by the Appellate Court.

Plaintiff filed with the declaration a copy of the bond and an affidavit of the amount due. The only part of the bond which is set out *in hæc verba* in the declaration consists of portions of the recitals therein which precede the condition. The declaration describes the bond as having been executed

by J. C. Ferguson & Co., as principals, but nowhere alleges who composed the firm of J. C. Ferguson & Co. The recitals of the bond so set out in the declaration are as follows:

. "Whereas, the rules of the said Board of Trade provide that all deliveries among members of said Board of Trade, of beef and hog product in store, in the absence of special agreement, shall be by the delivery of registered warehouse receipts, issued from such warehouses or places only as shall have been declared regular warehouses for the storage of such property, under the rules of the Board of Trade, by the board of directors, and further, that no warehouse receipt for beef or hog product shall be registered (by the registrar of said Board of Trade) except such as have been issued by or from a warehouse or place of storage declared to be a regular warehouse for the storage of such property by the board of directors of said Board of Trade; and before any warehouse or storage shall be declared a regular warehouse for such property, the proprietors thereof shall file a bond with the Board of Trade for such an amount as may be deemed sufficient, and with sureties approved by the board of directors, such bond to be made payable to the president of the board, or his successors in office, for the use of any person or persons suffering damages by reason of the neglect of duty, fault or fraud of the proprietor or manager of such warehouse, and that such bond may be prosecuted in the name of the president of the Board of Trade, for the use and benefit of the persons aggrieved or damaged by the acts of such warehouse proprietor or manager, and that all such bonds shall be conditioned upon the faithful and honest performance of his or their duties by the proprietor or manager of his or their warehouses, as defined by the laws of the State of Illinois, or by the rules of the Board of Trade not inconsistent therewith; and whereas, said rules also provide that no property shall be removed from the place indicated, by any registered receipt issued to represent it, until the registration of such receipt has been first canceled in the

office of the registrar of provisions of said Board of Trade, by writing or stamping across its face the words, 'Registration canceled,' and also providing that all warehouse receipts issued to represent property in store shall be consecutively numbered, and shall indicate on their face the distinguishing marks, numbers or characters upon the property intended to be represented by such receipt, which property shall be correspondingly marked; and whereas, the rules of said Board of Trade also provide that the board of directors of said Board of Trade may prescribe all necessary regulations and requirements for warehousing all kinds of property (other than grain) deliverable by warehouse receipt; and whereas, the said board of directors have, among other requirements, prescribed that the proprietors or managers of regular warehouses shall agree to honestly and cordially co-operate with the system of registration as adopted by the Board of Trade, and furnish the registrar all needed information to enable him to keep a correct record and account of all provisions in store in their respective places of storage, and shall report to him monthly the amount of each kind of provisions held in store by them."

The declaration then sets forth the condition of the bond wherein it is provided that if the said J. C. Ferguson & Co. shall at all times faithfully, honestly and prudently do and perform, all and singular, the duties and trusts as a warehouse proprietor or manager, as the same are prescribed by the laws of the State of Illinois, and as the same are further prescribed by the rules, regulations and requirements of the Board of Trade of the city of Chicago, not inconsistent with the laws of the State, and as said rules, regulations and requirements shall hereafter be modified, altered or amended, not inconsistent with said laws, and shall promptly pay or cause to be paid any damages sustained by any person or persons on account of neglect of duty, fault or fraud by said J. C. Ferguson & Co. as proprietor or manager of a warehouse for the storage of

provisions, then this obligations to be void, otherwise to remain in full force and virtue.

The declaration then proceeds in substance as follows : That said bond so executed was delivered to said Blake, as president of said Board of Trade; that said bond accurately stated the substance of the provisions of the rules of said Board of Trade as they were in force at that time, and said rules have continued in force ever since; that J. C. Ferguson & Co. were proprietors of the warehouse in Cook county declared by the directors of said Board of Trade a regular warehouse for the storage of beef and hog product upon the execution of said bond; that said Ferguson & Co., on May 16, 1886, borrowed from the Metropolitan National Bank the sum of $20,000, and gave as collateral security therefor duly registered warehouse receipts for 2500 barrels of mess pork; that said loan was evidenced by the promissory note of Ferguson & Co., payable on demand; that said warehouse receipts so deposited were ten in number, signed by J. C. Ferguson & Co., dated May 1, 1886, each of said warehouse receipts acknowledging the receipt of 250 barrels of mess pork stored in said Ferguson & Co.'s warehouse, which had been declared regular by the directors of said Board of Trade; that each of said receipts was duly registered with the Board of Trade; that none of said warehouse receipts have been surrendered, neither has the registration been canceled as to any of said receipts; that there is due to said Metropolitan National Bank upon said note more than the sum of $5000; that after the execution of said note and receipts, and while said receipts were still outstanding and said note unpaid, the said Ferguson & Co. fraudulently removed from said warehouse all of the property described in said receipts, contrary to the rules of said Board of Trade and the condition of said bond; that said Ferguson & Co. falsely rendered to the registrar of said Board of Trade false statements of provisions, including mess pork, purporting to be on hand on May 13, June 30, July 31, August 31

and September 30, 1886, falsely reporting that on each of said dates they had on hand 2500 barrels of mess pork, being the amount represented by said warehouse receipts; that afterwards Ferguson & Co. became insolvent and unable to pay said note, and by said fraudulent removal of said property the collateral securities became of no value; that Ferguson & Co. have not faithfully, honestly and prudently done and performed the duties and trusts of a warehouse proprietor, as the same are prescribed by the laws of Illinois and the rules of said Board of Trade, as provided in said bond, nor have the said defendants or any other persons paid the damages sustained by said Metropolitan National Bank on account of said neglect of duty, fault and fraud of said Ferguson & Co. as proprietors of a warehouse for the storage of provisions, by means whereof said bank has sustained damage to the amount of the penalty of said bond.

The second of defendant's pleas sets out the provisions of the charter of said Board of Trade, and avers that said Board is thereby limited to the making of such rules and by-laws as relate to the business and privileges of its members; that the rules recited in said bond existed for the benefit of said members and no other person; that said Blake, President, etc., received and holds said bond for the use and benefit of said members and no other person; and that said Bank, for whose use plaintiff sues, is not, and was not when this suit was begun, a member of said Board of Trade.

The first and third pleas set out the following instrument of release:

"The undersigned, the Metropolitan National Bank of Chicago, in consideration of the execution and delivery by Nathan M. Neeld and wife, Edward W. Ferguson and wife, E. B. Howard and wife, and John Q. Ferguson, to Henry Botsford, of their quitclaim deeds of that certain real estate in the county of Cook and State of Illinois known as the J. C. Ferguson Packing House property, and of the assignment by said J. C.

Ferguson & Co. to Hately Bros. of all their right, title and interest in and to any and all moneys at any time payable to said J. C. Ferguson & Co. for or on account of said packing house property, under and by virtue of that certain written contract between certain packers of hogs in the county of Cook and State of Illinois, does from all debts due and owing from them to said bank, hereby release said Neeld, Edward W. Ferguson, Howard and John Q. Ferguson, and each of them, as to all money, property, claims, demands, rights and interests which they may hereafter obtain or acquire, except their liability, or the liability of any or either of them, upon a certain bond bearing date of the 31st day of January, A. D. 1884, in the penal sum of $5000, executed by said Neeld, John C. Ferguson and Edward W. Ferguson, and their sureties, to E. Nelson Blake, president of the Board of Trade of the city of Chicago, his successor or successors in office, for the use and benefit of any person or persons entitled to receive the same, and except the right of said bank to institute and prosecute any suit or proceedings against said Board of Trade, and except the right of said bank to prosecute any and all suits now pending in attachment, or otherwise, whether in said county of Cook or elsewhere, it being intended hereby not to in any way release or impair the obligations of the parties to said bond, either as to said principals or sureties, but to leave the same in full force, the same as though this instrument had not been executed, and to leave said bank free to prosecute any suits against said Board of Trade, growing out of any business or transactions between the firm of J. C. Ferguson & Co. and said bank, connected with said Board of Trade or warehouse receipts held by said bank and registered by said Board of Trade, or some of its officers, agents or employes, it also being intended hereby not to waive, release or impair the right of said bank to prosecute any such suits and recover and receive any sum which can be or may be made against the property attached and the parties garnisheed, or

that may hereafter be attached or garnisheed in any such proceedings. Said bank hereby reserves the right to take all necessary proceedings to have the property, assets, choses in action, rights, credits, now possessed by said parties, or any of them, or in which they, or any or either of them, is or are now interested, applied toward the satisfaction of the debts due from said parties to said bank.

"In witness whereof, the said Metropolitan Bank of Chicago has caused these presents to be signed by its president, and its corporate seal to be hereto affixed, this 15th day of March, A. D. 1887."

Mr. FRANCIS A. RIDDLE, for the appellant.

Messrs. WILSON, MOORE & McILVAINE, for the appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

By the terms of the bond sued upon, as the same is described in the declaration, it was conditioned that J. C. Ferguson & Co. should at all times faithfully perform the duties of a warehouse proprietor or manager, and should "promptly pay or cause to be paid any damages sustained by any person or persons on account of neglect of duty, fault or fraud by said J. C. Ferguson & Co. as proprietor or manager of a warehouse for the storage of provisions." Appellant, as one of the sureties on the bond, obligated himself that the firm of J. C. Ferguson & Co., as constituted at the date of the bond, towit: on January 31, 1884, would perform the duties and pay the damages specified in the bond. Although the declaration fails to state who composed the firm of J. C. Ferguson & Co. when the bond was executed, yet it appears from the first and third pleas filed by the defendant, that the bond was executed by N. M. Neeld, J. C. Ferguson and E. W. Ferguson "and their sureties." Hence, the sureties in the bond only bound themselves for the faithful performance of said duties, and the

prompt payment of said damages, by the said firm when consisting of the three last named persons.

The declaration avers, by way of showing a violation of the condition of the bond, that more than two years after the date of the bond, towit: on May 16, 1886, J. C. Ferguson & Co. borrowed $20,000.00 of the Metropolitan National Bank, giving their note for that amount payable on demand, and pledged as collateral security therefor ten warehouse receipts for 2500 barrels of mess pork, dated May 1, 1886, and signed by J. C. Ferguson & Co., each acknowledging the receipt of 250 barrels of mess pork stored in said J. C. Ferguson & Co.'s warehouse; that said firm became insolvent, and fraudulently removed from said warehouse the property called for by said receipts while the same were outstanding and said note was unpaid, whereby the collateral securities became of no value, and the Bank sustained damages to the amout of $5000.00.

It appears from the first and third pleas of the defendant, that said firm of J. C. Ferguson & Co. consisted of N. M. Neeld, J. C. Ferguson, E. W. Ferguson and E. B. Howard when said loan was made and said warehouse receipts were pledged as collateral security, and when the receipts were made worthless by the fraudulent removal of the property therein described. Hence, the firm which violated the condition of the bond was not the firm of J. C. Ferguson & Co., composed of Neeld and the two Fergusons, but the firm of J. C. Ferguson & Co., composed of Neeld, the two Fergusons and E. B. Howard.

By demurring to the defendant's first and third pleas, the plaintiff admitted the truth of the averments therein contained; and therefore admitted that a firm composed of Neeld and the two Fergusons executed the bond as principals, and that a firm composed of Neeld, the two Fergusons and Howard failed to perform the duties and pay the damages named in the condition of the bond. A demurrer to a plea submits the whole record to the consideration of the court; and the court must give judgment to the party who, on the whole, appears enti-

tled to it. (1 Chitty on Plead. page 668; *Murphy* v. *Richards,* 5 Watts & Serg. 279; *Hall* v. *Hurford,* 2 Clark, (Pa.) 291; *Iglehart* v. *State,* 2 Gill & Johns. 235; 5 Am. & Eng. Enc. of Law, page 560 and cases in note 9). · The demurrer to the pleas, therefore, presents the question whether a surety, who guarantees the performance of a condition by a firm, can be held liable for the default of the firm after it has been changed by the addition of a new member. We think that this question, arising out of such a state of facts as is presented by the pleadings in this record, must be answered in the negative.

The rule is that, if a surety engages for an individual, the engagement is understood to extend to the acts of that individual alone, and will not continue if he takes in a partner. In other words, the surety for a single individual is not liable for a partnership of which such individual is a member. A surety, who guarantees that a firm composed of particular individuals will do certain acts or discharge certain duties, can not be held liable where there is a change in the firm, although the firm name is not changed. As the surety's liability is *strictissimi juris* and cannot be extended by construction, his guaranty to a partnership is extinguished if any partner is taken into or retires from the partnership, unless it appears from the terms of the instrument, that the parties intended the guaranty to be a continuing one without reference to the composition of the firm. A party may be induced to become surety for the individuals who compose a firm because of his confidence in their integrity, prudence, accuracy and ability as business men, but he cannot be presumed to have intended to become responsibe for the possession of such qualities by some third person, who may be afterwards taken into the firm without his knowledge or consent. It is often in the power of one partner, by want of discretion or integrity, to ruin another. (*Barnett* v. *Smith,* 17 Ill. 565; Brandt on Suretyship and Guaranty, secs. 98-100; 2 Parsons on Contracts, page 19, note (q); Theobald on Prin. and Surety, page 72; *Bellairs*

v. *Ebsworth,* 3 Camp. 52 ; *Palmer* v. *Bagg,* 56 N. Y. 523 ; *Shaw* v. *Vandusen,* 5 Up. Can. Q. B. Rep. 353 ; *Spiers* v. *Housten,* 4 Bligh's New Rep. 515 ; *Dry* v. *Davy,* 2 Perry & Dav. 249 ; *Backhouse* v. *Hall,* 6 Best & Smith Q. B. 507). It follows, that appellant, who became surety for J. C. Ferguson & Co. when that firm was composed of Neeld and the two Fergusons, did not continue to be liable as surety for the firm after it was changed by the admission into it of E. B. Howard.

The first and third pleas set out *in hæc verba* the instrument of release, which was executed by the Bank on March 15, 1887, and aver that the firm of J. C. Ferguson & Co., consisting of Neeld, the two Fergusons and Howard, were thereby released and discharged from their liability for said loan of $20,000.00 ; that said debt was thereby settled and satisfied ; that said warehouse receipts, held by the Bank as collateral security for the payment of said debt, were thereby released as such security, and discharged of all claims thereon by the Bank ; and that the Bank was not damnified by reason of any thing contained in the condition of said bond. The third plea alleges that this release was made without the consent of the defendant, Dupee.

It is provided in the release, that the Bank, in consideration of the conveyance of certain real estate by Neeld, the Fergusons and Howard, and of the assignment of certain contract rights by "said J. C. Ferguson & Co.," composed of said four persons, "does from all debts due and owing from them to said bank hereby release said Neeld, Edward W. Ferguson, Howard, and John C. Ferguson, and each of them as to all money, property, claims, demands, rights and interests which they may hereafter obtain or acquire, except their liability or the liability of any or either of them upon a certain bond," namely, the bond above described, upon which this suit is brought. One of the debts due from Neeld, Howard and the Fergusons to the Bank was said note for $20,000.00, given by the firm of J. C. Ferguson & Co. of which they were members, and

secured by the pledge as collateral security of said warehouse receipts so issued by said last named firm. It is manifest, that the Bank accepted the consideration named in the release in discharge of the liability of said four persons composing the firm of J. C. Ferguson & Co., unless such discharge was saved or prevented by the exception of "their liability or the liability of any or either of them" upon said bond. It will be observed, that the exception does not reserve the liability of any of said four members of said firm upon the note which they executed, but does reserve such liability as may exist upon the bond, the note and bond being separate and distinct instruments. That the only liability reserved was the liability upon the bond appears from the following language of the release: "it being intended hereby not to in any way release or impair the obligations of the parties to said bond." The parties to the bond, besides the obligee, were J. C. Ferguson & Co., composed of Neeld and the two Fergusons, principals, and Baldwin and appellant, sureties. Howard was not a party to the bond, nor was the firm, of which Howard was a member, a party thereto.

The exception in the release reserved the liability of the sureties upon the bond. What was that liability? As has already been shown, the sureties had rendered themselves liable for the faithful performance of the duties of a warehouse proprietor or manager by J. C. Ferguson & Co. composed of Neeld and the two Fergusons, and for the payment of such damages as should result from the neglect of said duties by said firm. The sureties were not liable for the acts or the default of Howard or of the firm to which he belonged, nor did the release reserve any remedy against him or his said firm upon the bond.

In releasing Howard from his liability on the note for $20,000.00, the release does not reserve the liability of Neeld and the two Fergusons upon that note. In releasing the four partners from liability upon the note, the instrument of re-

lease does not reserve the right of the Bank to proceed against Baldwin and Dupee as sureties upon the note, or as joint obligors thereon, because they did not sign the note and were in no way parties to it. It has been held that, where a creditor releases the principal debtor, and, at the same time and in the same instrument, reserves his remedy against the surety, the latter will not be released. In such case the release will be regarded as a covenant not to sue the principal, and the surety retains his right of contribution from the principal. So, where one co-obligor is released with a provision that the rights of the creditor against the other co-obligors shall not be affected, the latter will not be discharged, because the release is treated merely as a covenant not to sue, and the right of contribution is preserved. (Brandt on Sure. & Guar. sec. 123; Pitman on Prin. & Surety, page 189; Fell's Guar. and Suretyship, page 236, note 1; Colebrook on Collat. Securities, page 324, sec. 250). It will generally be found, however, upon an examination of the cases which uphold this doctrine, that the principal, or obligor, as to whom there is a covenant not to sue, and the surety, or co-obligor, against whom the remedy of the creditor is reserved, are signers of, or parties to, the same obligation. The rule is thus clearly stated by Colebrooke in his work on Collateral Securities, (sec. 250 *supra*): "An agreement, upon valuable consideration, by a creditor to release and discharge a principal debtor, but expressly reserving in such instrument of release, and as a part of the same transaction, the right of the creditor to proceed as against *a surety bound upon the same obligation*, does not affect, in equity or at law, the continuing liability of the latter." (*Parmelee* v. *Lawrence*, 44 Ill. 405; *Mueller* v. *Dobschuetz*, 89 id. 176.)

In the present case, if the appellant had signed the note for $20,000.00 with Neeld, Howard and the Fergusons as surety for them, and the release, executed to them by the Bank of their liability upon said note, had reserved its rights

and remedies against appellant upon the note, appellant could not claim to be discharged under the doctrine announced in *Parmelee* v. *Lawrence, supra,* and *Mueller* v. *Dobschuetz, supra,* and other cases.    But appellant was not a surety for the makers of the note, and, therefore, when the makers of the note were released, there could be no reservation of any rights as against appellant.    It follows that the release of Neeld, Howard and the Fergusons, composing the firm of J. C. Ferguson & Co., from their liability upon the note was an absolute release, and not a qualified or conditional suspension of the right of action.

The indebtedness upon the note having thus been released, the warehouse receipts, which were pledged as collateral security for that indebtedness, were also thereby released.    The only damage alleged in the declaration to have resulted from a violation of the condition of the bond was the loss of what was due on the note by reason of the fraudulent character and consequent worthlessness of the collateral security.    But when the note was discharged for the consideration named in the instrument of release, the interest of the Bank in the warehouse receipts was at an end, and the makers of the note were entitled to a return of the receipts.    (*Bowditch* v. *Green,* 3 Metc. 360;  Colebrooke on Coll. Secur. secs. 102, 115, 129, 448).    The Bank having taken real estate and contract rights in full settlement of the note, all claim which it had upon the collateral security was gone.    The extinguishment of the debt operated as a waiver of the damages incurred by the worthlessness of the collateral security, because there was no way of estimating those damages except by the amount of the debt. The reservation of the right to sue on the bond was the reservation of the right to sue for the fault or neglect of the principals thereon, namely:  Neeld and the two Fergusons composing the firm of J. C. Ferguson & Co., but there was no reservation of the right to sue for damages on account of the character of the warehouse receipts, pledged by J. C. Ferguson

& Co., composed of Neeld and the two Fergusons and Howard, to secure an indebtedness of the latter firm, which was cancelled and discharged.

For the reasons stated we think that the demurrer to the first and third pleas should have been overruled.

Accordingly, the judgments of the Appellate and Circuit Courts are reversed, and the cause is remanded to the Circuit Court for further proceedings in accordance with the views herein expressed.

*Judgment reversed.*