## W. E. Skinner v. D. Sullivan et al.

### Gen. No. 12,584.

1. VERDICT—*effect of, upon questions of fact.* Questions of fact fairly presented are deemed to have been settled by the verdict.

2. SURETY—*reason upon which extension of time of payment to principal discharges surety.* The general rule is that a binding agreement between a creditor and a debtor for an extension of time discharges the surety either on the legal ground that the obligation is thereby discharged or more generally upon the equitable ground that the surety's right of immediate payment and subrogation is interfered with.

SMITH, P. J., dissenting.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed July 13, 1906.

**Statement by the Court.** This is an action brought by appellees, bankers at San Antonio, Texas, to recover upon a promissory note for $500 dated March 26, 1898, payable one hundred eighty days after date with interest. The note is signed by H. O. Skinner and by appellant, the former being the principal debtor, and appellant, his brother, guarantor.

In February of the following year the total indebtedness of H. O. Skinner to appellees amounted to $958.75. This was evidenced by four notes, one of which was the note for $500 now in controversy. A part of the indebtedness

was secured upon real estate belonging to said Skinner,
which, however, was designated as a homestead and hence
under the laws of Texas, it is said, of little value as secu-
rity.   Appellees also held an assignment of H. O. Skinner's
interest in a twenty year life insurance policy for $1,000.
There is evidence in behalf of appellant tending to show
that early in 1898 said H. O. Skinner requested appellees
to extend the time for payment of this indebtedness.   It
is claimed by appellant that it was agreed between the
parties that the indebtedness should be consolidated, the
time of payment extended and that appellees would cancel
the $500 note in question, mark it paid and release appel-
lant as guarantor.   Whatever the agreement was, as to
which there is dispute, appellees proceeded to foreclose the
trust deed upon the real estate, bid it in at the sale and
then conveyed it to Ida V. Skinner, wife of H. O. Skinner,
reserving in their deed a vendor's lien, the object of this
procedure being to obtain under the laws of Texas a valid
lien and improve the security.   The conveyance to Ida V.
Skinner was made March 8, 1898.   The vendor's lien
therein reserved amounted to $965, representing what was
then the total of H. O. Skinner's debt to appellees, and for
this amount H. O. Skinner executed a note which repre-
sented and was secured by the vendor's lien.   He also exe-
cuted a second and collateral note in and by which he
pledged the collateral therein described, including the ven-
dor's lien note and the $500 note in controversy.   This
collateral note is as follows:

"$965.00 Gold.
                    SAN ANTONIO, TEXAS, Mch. 8, 1899.
    Three Hundred & Sixty days after date, without grace,
I, we or either of us, promise to pay to the order of D.
Sullivan & Co., at their Bank, in the City of San Antonio,
Texas, Nine Hundred & Sixty-five dollars, in United States
Gold Coin of standard weight and fineness, with interest
at the rate of ten per cent. per annum from date with an
attorney's fee of ten per cent., should judicial proceedings
be used in collecting; having pledged to the said D. Sulli-
van & Co., as security for this note and for any other in-

debtedness or obligation which may be now or hereafter due or owing to the said D. Sullivan & Co., and for which I may be directly or indirectly bound, with authority to sell the same on the non-performance of this promise, or of any other promise, or non-payment of any other indebtedness for which same is pledged as above stated, in such manner as they, in their discretion, may deem proper, either at public or private sale, (with or without notice) and apply the proceeds, all or any portion thereof, at their discretion, to the payment of this note or any other obligation or indebtedness due or owing to them as above stated by me, the following:

Assignment Life Policy E. L. J. Co. Life H. O. S. $1,000.

Note Mrs. Ida V. Skinner & H. O. Skinner secured by city property $965.

Note W. E. Skinner & H. O. Skinner $500.00.

Note H. O. Skinner & R. H. McCracken for $50.

Any member of the firm of D. Sullivan & Co. is authorized to purchase said collateral for their account when sold.

No. 13,989.                    Maturity Mch. 3, 1900.

H. O. SKINNER."

The collaterals so described were subsequently sold under authority given in the note and bid in by appellees. The "note W. E. Skinner & H. O. Skinner $500.00" so bid in is the note upon which recovery is sought in this suit.

WINSTON, PAYNE & STRAWN, for appellant; EDWARD W. EVERETT, of counsel.

ALBERT M. KALES, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that he was released as guarantor upon the note in controversy by an alleged extension of the time of its payment given for a valuable consideration to the principal debtor H. O. Skinner, without the guarantor's consent; that the debt represented by said $500 note was merged into the note for $965 given for the vendor's lien and also in the second or collateral

note for the same amount given at the same time, and must be deemed to have been thereby paid.

It is evident that the vendor's lien note secured upon the real estate was regarded as insufficient security for the amount it represented, and the collateral note for the same amount was given to make all the collaterals thereby pledged available, if need be, for payment of the debt. It was claimed at the trial that when the consolidation of the different notes representing portions of the original debt was made, appellees expressly agreed to extend the time of payment to cancel the $500 note and mark it paid and to release appellant as guarantor. Appellees deny any such agreement, and that in accepting the vendor's lien note and security and taking the collateral note payable at a later date which pledged the note sued on as part of the collateral, they either extended the time of payment of the debt the latter represented or that the new notes were taken in payment of said $500 note. The question whether the new notes were in fact taken in payment of the note in controversy under an agreement to that effect was the main issue at the trial. The question of fact seems to have been fairly submitted to the jury and should, we think, in view of the evidence be deemed to have been settled by the verdict. If any such preliminary agreement was made, it must be deemed to have been changed by the contract evidenced in the written collateral note showing the final agreement of the parties. It is not claimed that such agreement to cancel the note sued upon and mark it paid was made with the guarantor, but that it was made with the principal debtor by whom the collateral was put up, and whose conduct in so pledging it is scarcely consistent with the existence of such agreement at that time. It can scarcely be presumed that it was intended to pledge on the one side nor accept as collateral on the other a note already paid and discharged. There is evidence tending to show that said principal debtor was fully aware of what he was doing when the pledge was made. While claiming that he did not know at the time he signed the new $965 collateral

note that it recited on its face the $500 note was put up with it as collateral security, he subsequently admitted he had stated in a deposition taken in Texas for this case, that he was "fully aware that it was included as collateral security at that time" and could account for it only as an oversight on his part.   If he was "fully aware" of it at the time he signed the collateral note, the consequences of his deliberate written contract can scarcely be avoided by attributing it now to an oversight.

The principal contention now urged is that by the terms of the collateral note the time of payment of the original debt evidenced by the note sued on, was extended for a valuable consideration and without the consent of the surety, thereby releasing the latter.   The $500 note in controversy was, however, then overdue, and apparently it was expressly reserved from such extension at least as against the surety, when pledged and accepted as collateral to the new note for the consolidated debt.   It is true, its amount was included in the new note which did not mature until March 3, 1900.   But its reservation as collateral to the new note indicates that its tenor and effect were not to be thereby affected and that such was the understanding at the time.   If paid before the new note became due, it could have been credited thereon.   The money paid would merely replace the note whether retained separately until maturity of the new note or applied thereon.   When the $500 note was pledged as collateral, the presumption is that the parties intended it to be effective as such, and this it could be only while it remained in force and effect according to its terms, at least as regards the guarantor.   In A. & E. Ency. of L., 2nd Ed., Vol. XXVII, p. 491, Article Suretyship, it is said: "Much controversy has arisen as to the exact effect to be attached to the mere acceptance by the creditor of a negotiable note or other obligation. Several difficulties arise.   There may be doubt as to whether the note is accepted in satisfaction of the old obligation or as collateral security merely or in conditional payment. Again there may be a question whether the acceptance of

the security operates as an agreement on the part of the creditor to extend time. The liability of the surety on the principal debt can, of course, be enforced only where the obligation is taken solely as collateral or additional security. If it be taken in satisfaction or in conditional satisfaction, the surety is discharged. The understanding of the parties at the time of the transaction will of course control * * *. The fact such collateral matures in the future is not of itself sufficient to raise the presumption of an extension of time such as to release the surety." In the case at bar it is clear that the vendor's lien note was "taken solely as collateral or additional security." It is part of the collateral and pledged as such. As to the other or collateral note, it is equally clear that it was not accepted in satisfaction of the old obligation evidenced by the $500 note, but rather as a means of making all the collateral mentioned, including that old obligation, available for payment of the entire debt. The fact that said new collateral note matured in the future "is not of itself sufficient to raise the presumption of an extension of time such as to release the surety."

The general rule is that a binding agreement between creditor and debtor for an extension of time discharges the surety either on the legal ground that the obligation is thereby changed or more generally upon the equitable ground that the surety's right of immediate payment and subrogation is interfered with. See A. & E. Ency. of L., 2nd ed., vol. 27, p. 489, sec. VI. This right of payment and subrogation could in the case at bar have been exercised by the surety. The $500 note was and had been overdue since September 22, 1898. The guarantor could have paid it at any time. The reason therefore for which an extension of time of payment of the debt has been held to discharge the surety would fail in the present case, even if the acceptance of the new collateral note be regarded as creating a binding agreement between the creditor and principal debtor for an extension of time. In Mueller, Exr., v. Dobschuetz et al., 89 Ill. 176-182, it is said by Mr. Justice Schol-

field that "an agreement which preserves the right of the creditor to proceed against the surety or the right of the surety to proceed against the principal will not discharge the surety." In Dupee v. Blake, 148 Ill. 453–465, it is said: "It has been held that where a creditor releases the principal debtor and at the same time and in the same instrument reserves his remedy against the surety, the latter will not be released. In such case the release will be regarded as a covenant not to sue the principal and the surety retains his right of contribution from the principal." If, therefore, the fact that the new collateral note for $965 accepted by appellees includes the amount of the then overdue $500 note sued upon, and that the new note is made payable nearly a year later, be deemed an extension of time by the creditors to the principal debtor of the debt originally evidenced by the $500 note, it yet appears that "at the same time and by the same instrument," namely, the new collateral note itself, the creditors reserved their remedy against the surety when they retained the $500 note upon which he was guarantor as part of the collateral in said new note pledged, thus treating it as a valid subsisting obligation. The surety was not in any event released by the transaction. He still retained his right of payment and of contribution from the principal. He could so pay after the execution and delivery of the collateral note as well as before. In the case last above cited the rule stated in Colebrook on Collateral Securities is quoted with approval as follows: "An agreement upon valuable consideration by a creditor to release and discharge a principal debtor, but expressly reserving in such instrument of release and as a part of the same transaction the right of the creditor to proceed against a surety bound upon the same obligation does not affect in equity or at law the continuing liability of the latter." In Parmelee v. Lawrence, 44 Ill. 405–412, it is said " the reason why a release of one of several obligors discharges all is, that by such release the right of contribution is cut off. Of course if that right is reserved the release should be construed as a simple cove-

nant not to sue, leaving the liability of the co-obligors unimpaired. The reason of the rule failing, the rule itself should cease." See also *idem*, p. 413, *et seq.* We regard the right of contribution at least, even if there was an extension of time given the principal debtor, as reserved in the case at bar by the pledge of the $500 note as collateral; and the collateral note containing the pledge and maturing nearly a year later may be construed as a simple covenant not to sue the principal debtor until its maturity, leaving the liability of appellant unimpaired.

While the verdict and judgment are perhaps less, as appellant urges, than appellees might have been entitled to recover, appellees are not complaining and appellant is not entitled to do so merely because the judgment against him is less than he might have been compelled to pay.

In view of the conclusions stated we deem it unnecessary to pursue the discussion of other matters presented in the briefs. Finding no material error, the judgment of the Superior Court will be affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE SMITH dissenting.

In my opinion the verdict and judgment is contrary to the weight of the evidence and should be reversed. The evidence compels me to the conclusion that the whole of the indebtedness of W. E. Skinner to D. Sullivan & Co., including the note sued on in this case, was consolidated and extended in the note for $965 due March 8, 1900, and the agreement in execution of which it was given. The consideration for the extension was the additional security given to D. Sullivan & Co. for the indebtedness. The only fact in the case which militates against this conclusion is that the note sued on is mentioned in the $965 note as a collateral security for its payment. This was not in accordance with the agreement of extension, and the evidence does not explain how it happened. The undisputed evidence of the agreement of extension should prevail against this unexplained fact, which cannot be reconciled with the extension agreement, and what was done under it. The

amount of the note for $965 shows conclusively with the other evidence in the case that the $500 note sued on was a part of it and included in it.   It could not be included in it and at the same time be excluded from it for any purpose.

The basis of this theory of the transaction is a mere inference from the fact that it is mentioned in the collateral clause of the $965 note, and not taken up and cancelled. The uncontradicted testimony of Skinner is that the note was not taken up and cancelled at the time, by an oversight.   In my opinion the consolidation of the indebtedness of W. E. Skinner to appellees, and the giving of the new note for the whole of it with security, was a payment of the note sued on.   Further, the uncontroverted evidence is that the indebtedness evidenced by the note sued on was extended as above stated without the consent of appellant, and by the familiar rule appellant was thereby released from his contract as guarantor or surety.