OAK BROOK BANK, Plaintiff-Appellant, *v.* HAWTHORNE BANK OF WHEATON, Defendant-Appellee.

Second District    No. 79-736

Opinion filed November 26, 1980.

Robert E. Neiman and John C. Loring, both of Neiman and Grais, of Chicago, for appellant.

Joseph A. Donovan, of Donovan & Roberts, of Wheaton, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:
■■ Plaintiff, Oak Brook Bank, appeals the trial court's dismissal of its complaint against defendant, Hawthorne Bank of Wheaton. The central issue presented for review concerns the legal consequences of a document entitled "SATISFACTION RELEASE OF JUDGMENT" executed by a judgment creditor and filed with the circuit court clerk. In response to the facts set forth in plaintiff's sworn complaint and exhibits, defendant filed a motion to dismiss under oath alleging that plaintiff's action was barred by reason of a satisfaction release of judgment, a copy of which was attached thereto. We deem defendant's motion to have been filed pursuant to section 48(1) (d) and (f) of the Civil Practice Act; accordingly, all facts well pleaded in the complaint and in defendant's sworn motion are admitted and are set forth in the following paragraphs. See *Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171.

In January 1974 plaintiff loaned $113,000 to Paul R. Stansell and Gary and Jane Lemkau (obligors), neither of whom are parties to this action. As security for this loan, plaintiff received a collateral assignment of Stansell's beneficial interest in a land trust wherein defendant was the trustee and the corpus consisted of the Bowgren farm in Kane County, Illinois. The land trust agreement provided that defendant, as trustee, would deal with the trust corpus only upon the written direction of Stansell or "such other person or persons as shall be from time to time named in writing by the beneficiary or beneficiaries at the time * * *." Plaintiff gave written notice to the defendant that Stansell had pledged his interest in the land trust to the plaintiff under a collateral assignment; said notice also provided in part as follows:

"YOU ARE HEREBY further notified that you shall not hereafter accept further directions in connection with the trust prop-

erty, title to which you hold and may hereafter hold, as Trustee as aforesaid, unless the direction in writing provided for in the Trust Agreement is joined in by or consented to in writing by said OAK BROOK BANK (in its individual capacity) or unless the original of said Collateral Assignment is delivered to you bearing an endorsement of the cancellation or release thereof by the said OAK BROOK BANK."

Plaintiff acknowledged in writing its receipt "of the above and foregoing Notice and the direction therein contained."

On November 10, 1977, in case No. 77L1104 in the circuit court of Du Page County, plaintiff obtained a judgment against the obligors in the amount of $131,809.68 plus costs and statutory interest of 8 percent per annum; at that time, and at all times thereafter, the corpus of the land trust (Bowgren farm) was worth in excess of the amount of the plaintiff's judgment plus costs and interest. In November 1977, acting at the sole direction of Stansell, and without plaintiff's direction or consent, defendant deeded out the corpus of the trust, thereby extinguishing the collateral security for Stansell's loan. Plaintiff first learned of the latter occurrence in February 1978; the officers of the two banks thereafter held a meeting at which defendant's officers admitted its "mistake"; at that time defendant refused to reimburse plaintiff for its damages and continues to do so. On March 27, 1978, after informing defendant's attorneys of its intentions, plaintiff accepted a settlement offer from Stansell and the Lemkaus (obligors) of $125,000 in settlement of the judgment against them on the loan. Plaintiff states that it would not have accepted this amount had it still had a claim against the collateral in the land trust. In this suit, plaintiff seeks to recover from the defendant the difference between the actual amount it received from the obligors in settlement of the judgment and the total amount due on the judgment including interest and costs.

Defendant's motion to dismiss has attached thereto a "SATISFACTION RELEASE OF JUDGMENT" filed with the circuit court on March 30, 1978, in case No. 77L1104, executed by the plaintiff; therein it is stated that the judgment creditor, "having received full satisfaction and payment, releases the judgment entered against the obligors on November 10, 1977 for $131,809.68 and costs."

It is defendant's theory that plaintiff's original cause of action on the note went to a judgment and that the full satisfaction and release of judgment is a bar to any other action and is *res judicata* in this proceeding. The trial court granted defendant's motion and entered judgment in favor of the defendant and against the plaintiff; plaintiff has filed a timely notice of appeal.

Plaintiff contends on appeal that the present action is one seeking

recovery of damages for defendant's breach of an agreement by failing to preserve the collateral securing the loan. Plaintiff views this cause of action as separate and distinct from its suit on the loan against Stansell and the Lemkaus and contends that therefore it may recover its damages notwithstanding the release and satisfaction of the judgment against them.

Defendant first contends that plaintiff originally had the option of proceeding against the collateral or against the obligors on the loan, and that inasmuch as the evidence needed to sustain one cause of action would have been the same as that needed to support the other, the instant proceeding was barred by application of the doctrine of *res judicata*. Defendant's second contention is that the release satisfaction of judgment given the obligors on the note released the collateral agreement as well, thereby extinguishing plaintiff's rights against defendant under the so-called acknowledgment agreement.

Historically, *res judicata* has required that three essential elements be the same in both cases, namely, the cause of action, the subject matter, and the parties or their privies. (*Drabik v. Lawn Manor Savings & Loan Association* (1978), 65 Ill. App. 3d 272, 382 N.E.2d 333.) In comparing the two causes of action involved here, the relevant test is whether there are facts essential to the maintenance of both causes of action or whether the same evidence would sustain both. (*Kahler v. Don E. Williams Co.* (1978), 59 Ill. App. 3d 716, 375 N.E.2d 1034.) Application of this doctrine will prevent relitigation not only of matters which were actually determined, but of any other matters which might have been raised and determined. *Smith v. Bishop* (1962), 26 Ill. 2d 434, 187 N.E.2d 217.

■■ As to "identity of parties" in the two cases involved here, defendant asserts that it was in privity with Stansell by virtue of its position as trustee holding the collateral; plaintiff answers that since the trust was not a party or an issue in the suit on the loan and since defendant was neither a co-obligor nor a guarantor of the loan, defendant was a stranger to that cause of action for payment of the loan. "A privy to a judgment is one whose succession to the rights of property thereby affected occurred after the institution of the particular suit, and from a party thereto. * * * Privity contemplates a mutual or successive relationship to the same property rights which were the subject matter of prior litigation." (*Smith v. Bishop* (1962), 26 Ill. 2d 434, 438, 187 N.E.2d 217, 219.) As thus defined, there was no privity between defendant and Stansell for purposes of *res judicata*, as the instant defendant did not enjoy a mutual or successive relationship to the same property rights which were the subject matter of plaintiff's action against Stansell.

While there is a trend toward relaxing the identity of parties criterion, where, as here, the party against whom the *res judicata* defense

is attempted to be used is the same in both cases (*Riley v. Unknown Owners* (1975), 25 Ill. App. 3d 895, 324 N.E.2d 78), relaxation is inappropriate here given the largely unrelated issues of fact involved in the two lawsuits. The essence of plaintiff's action against Stansell was a default on an obligation to repay a loan, trial of which could have been held without any reference whatever to the collateral or its assignment. The instant case involves an alleged breach of an agreement acknowledging an assignment of collateral, in which evidence pertaining to the Stansell loan would be required only as to the issue of damages. Furthermore, the instant case involves issues which could not have been raised in the original case against the obligors because defendant's act of deeding out the collateral occurred subsequent to the entry of the judgment therein. Defendant's *res judicata* argument is therefore without merit.

The remaining question concerns the effect of the satisfaction release of judgment plaintiff filed in the suit against the obligors on the loan. In reliance on *Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171, plaintiff asserts that a satisfaction of judgment on a secured note does not bar a subsequent suit against a third party for impairment of the collateral securing the loan. The plaintiff in *Johnson* was the holder of a $137,000 promissory note from Insurance Procedures Bulletin, Inc. (IPB). IPB underwent dissolution and its monetary assets were deposited with an assignee for the benefit of creditors. Plaintiff brought suit on the note against the assignee, which suit was settled for $72,000. The plaintiff then executed a release in favor of the assignee and dismissed the suit but subsequently brought a tort action against Nationwide and certain individual defendants for maliciously conspiring to dissolve IPB and causing the transfer of its assets to Nationwide so as to defeat plaintiff's contract rights against IPB on the note. The defendants argued that IPB's obligation under the note merged into the prior judgment and that plaintiff was seeking to relitigate the same claim. Reversing the trial court's dismissal of the tort action, the Johnson court ruled that although the release would prevent an action against IPB or its assignees, the plaintiff could proceed against those who had tortiously conspired to cause IPB's wrongful dissolution, thereby precipitating plaintiff's loss.

Although *Johnson* involved a tort action, the instant plaintiff argues that the present suit similarly involves a separate cause of action from the suit on the note, *i.e.*, breach of the acknowledgment agreement. We first note that the "acknowledgment agreement" which was alleged to have been breached by defendant merely states that "the undersigned acknowledges receipt of the above and foregoing notice and the directions therein contained." As there is no express agreement to comply with the

directions not to deal with the trust property other than with the consent of plaintiff, but only an acknowledgment of receipt, it is arguable that there was, in fact, no valid contract at all which could be said to have been breached by defendant. However, as neither party has addressed this issue, we assume for purposes of this appeal that the "notice" did constitute at least an implied agreement to abide by the terms thereof.

■■■ The trial court found that "the release of the principal is a release of the surety and collateral and that the plaintiff has no right to the collateral and therefore has no cause of action against the defendant." The court based its decision on the language of the release which recited that it was in "full satisfaction and payment" of the judgment against Stansell and the Lemkaus. It is indeed clear that plaintiff has no further claim against the collateral, nor does plaintiff have any other right to payment based on that collateral or on the note underlying the judgment which was released. It is also true that a release of one joint obligor is a release of a co-obligor or surety. However, in this case, defendant was merely a trustee holding the collateral for the benefit of the beneficiaries; defendant is neither a joint tortfeasor with nor a surety for the obligors on the note. A release to one who is not in fact liable jointly with another will generally not discharge such other. (*Western Tube Co. v. Zang* (1899), 85 Ill. App. 63.) It therefore appears that defendant cannot be said to have been discharged of all liability on the theory that the release discharged all and any co-obligors or sureties on the note.

Although plaintiff claims that the cause of action brought in this case, for breach of contract, is distinct from that in the suit on the note, it must be acknowledged that plaintiff is seeking to avail itself of the undertakings implied by the agreement of the trustee to hold the corpus of the trust as security for the underlying indebtedness. Any damages resulting from the breach would necessarily be measured by the indebtedness due on the note, *i.e.*, the difference between the entire amount due on the judgment and the amount actually received. The trial court relied on the rationale of *Dupee v. Blake* (1893), 148 Ill. 453, 35 N.E. 867, as indicating that plaintiff has, by its release and satisfaction, "waived" any damages for breach, and that, therefore, the complaint must be dismissed. In *Dupee*, a bank brought suit against a surety on a warehouseman's bond; the warehouseman thereafter became insolvent, defaulting on a loan which was secured by 10 warehouse receipts and fraudulently removing from the warehouse the property which the receipts described. The bank had previously issued a release of an indebtedness of the warehouseman and the court described the consequences of the release in the following terms:

> "The indebtedness upon the note having thus been released, the warehouse receipts, which were pledged as collateral security for

that indebtedness, were also thereby released. The only damage alleged in the declaration to have resulted from a violation of the condition of the bond was the result of what was due on the note by reason of the fraudulent character and consequent worthlessness of the collateral security. But when the note was discharged for the consideration named in the instrument of release, the interest of the Bank in the warehouse receipts was at an end, * * *. The extinguishment of the debt operated as a waiver of the damages incurred by the worthlessness of the collateral security, because there was no way of estimating those damages except by the amount of the debt." 148 Ill. 453, 466, 35 N.E. 867, 871.

■■ Although the above-quoted language would seem to be appropriate here, we believe *Dupee* to be distinguishable from the facts of this case. In *Dupee*, the defendant surety on a warehouseman's bond was found to be released when the warehouseman was released. The liability of. a surety arises from the same conduct as does the liability of his principal, *i.e.*, nonpayment of the obligation; thus, when the principal is released, so is the surety, as there could be no further damages to plaintiff arising from that conduct. In the instant case, defendant was not a surety nor was it a joint obligor; any liability of defendant arises from its conduct in transferring the trust property in violation of its agreement with plaintiff. The liability of the obligors (or of a surety if there had been one) arose from their agreement to repay the loan and their subsequent default. We find that the relationship between the plaintiff and defendant is more akin to that of *Johnson* than that of *Dupee*. In *Johnson*, plaintiff released the debtor on a note and then sued the defendant in tort for its conduct in fraudulently transferring the assets of IPB which could have been seized for nonpayment of the judgment. The *Johnson* court found that even if there could be no further legal action on the note against the principal or its assets which could be seized, plaintiff could proceed in tort for conduct by defendant which precipitated plaintiff's loss. In *Johnson*, as in this case, the measure of damages would necessarily be the difference between the amount due from the judgment on the note and the amount plaintiff was "forced" to accept in satisfaction of that judgment. If a tort action may be brought under these circumstances, we see no reason why a cause of action for breach of contract under similar circumstances should be barred merely because the damages must be measured by reference to the amount not received upon satisfaction of an obligation which has been released. Thus, as the cause of action against defendant is one for breach of contract based on conduct in violation of an agreement separate from, albeit related to, the released obligation (see *Johnson*), we hold as a matter of law that plaintiff's action against defendant is not

barred by the release and satisfaction of the judgment against Stansell and the Lemkaus.

For the foregoing reasons, the order of the trial court dismissing plaintiff's complaint is reversed and the cause is remanded for further proceedings in accordance with the views expressed in this opinion.

Reversed and remanded.

VAN DEUSEN and NASH, JJ., concur.