[No. 9435. Department One. June 9, 1911.]

ALFRED BLODGETT, *Respondent*, v. OTIS INGLIS *et al.,*
*Appellants.*[1]

ASSIGNMENT FOR CREDITORS—DISCHARGE—PARTNER OF DEBTOR—LIABILITY FOR DEFICIENCY. Where creditors agree to accept an assignment in full payment of their claims, they cannot subsequently recover the deficiency from an associate of their debtor on the claim that there was a silent partnership between them; since the discharge of one partner discharges all.

SAME—REPRESENTATIONS—EFFECT. An agreement by creditors to discharge their debtor in consideration of an assignment for creditors operates to discharge the debtor's partner, notwithstanding representations made to the creditors that it would not have that effect, where the partner was not responsible for the representations.

Appeal from a judgment of the superior court for King county, Gay, J., entered October 25, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

[1]Reported in 115 Pac. 1043.

17—63 WASH.

*Wm. Parmerlee,* for appellants.

*Will H. Thompson,* for respondent.

Mount, J.—The plaintiff brought this action to recover a balance alleged to be due upon three causes of action for goods sold and delivered. The first cause of action was for goods sold and delivered by the plaintiff. The other two were based upon assigned claims of the same character. The defendant Siegel made no defense. The other two defendants denied liability. Upon the trial of the case to the court and a jury, it was conceded the goods were sold and delivered to defendant Siegel. The main question in the case was, whether the defendant Siegel and the defendants Otis Inglis and Frank Inglis were copartners at the time the goods were sold, or afterwards became partners, so that they became liable for the claim sued upon. At the close of the plaintiff's evidence, and at the close of all the evidence, the court declined to direct a verdict in favor of the defendants Inglis Brothers. The jury found a general verdict in favor of the plaintiff for the full amount claimed. The defendants Inglis Brothers have appealed from that judgment.

It appears that, in the years 1906-7, the defendant Siegel was engaged in the business of logging. He had purchased timber from Inglis Brothers at an agreed price per thousand feet. In the year 1907, Mr. Siegel was largely in debt to various creditors. In that year he suffered a stroke of paralysis, and was unable to carry on his business. Inglis Brothers, who had been loaning him money and were his largest creditors, thereupon took charge of the logs and logging equipment for the purpose of saving as much as possible to his estate. The claims sued upon were mostly furnished prior to this time. Some of them were perhaps furnished after this time, but all were furnished upon the credit of Siegel. The various creditors, thinking that the assets were sufficient to pay all the claims, entered into a contract in writing with Mr. and Mrs. Siegel, as follows:

"This agreement between W. L. Siegel and Addie W. Siegel, his wife, (hereinafter called debtors), P. V. Davis, (hereinafter called trustee), the undersigned, being all the creditors of said Siegel and wife, (hereinafter called creditors), and Tallie Jones, (hereinafter called agent):

"Witnesseth: That whereas the said debtors, on account of the protracted sickness of said W. L. Siegel, and the shrinkage of the value of logs, have become indebted to said creditors for various amounts and said debtors and creditors are mutually desirous of conserving all the assets of said debtors, connected with their business of logging heretofore conducted by them, for the use and benefit of all the creditors of said debtors in proportion to their respective claims, and of avoiding the delays, inconvenience and expenses of court proceedings for the enforcement or collection of said claims of said creditors, and whereas all the parties hereto have agreed that all of the assets of said business of logging be assigned and transferred to said trustee, for the use and benefit of said creditors and said creditors have agreed, that Jones shall act as their agent, representative and attorney in fact, for the purpose of carrying out this agreement:

"Now, therefore, the said debtors in consideration of the premises and the covenants herein contained, do hereby, sell, assign, transfer and convey to the said P. V. Davis, all the timber, contracts for timber, logs, booms, chains, tools, implements, notes, accounts and other property of every kind and description, connected with or constituting a part of the logging business of the said debtors, heretofore conducted and carried on by them, near Auburn, King county, Washington, including a certain donkey engine with lines, blocks, and tackle connected therewith, together with the logging camp and all buildings and other property constituting a part thereof, but in trust nevertheless, for the use, benefit and security of said creditors, and upon and for the further trust, uses and purposes hereinafter declared, that is to say:

"(1) That said trustee shall use every reasonable effort to convert all said assets into cash, as soon as shall appear to be for the best interest of all concerned, and shall sell all or any portion of said property at the best price obtainable.

"(2) That said trustee will not sell any portion of said property, without the consent of said agent, and all cash received by said trustee shall be deposited in the Puget Sound

National Bank of Seattle in the joint names of said trustee and said agent and all checks drawn upon said funds shall be signed by said trustee and countersigned by said agent.

"(3)    That out of the funds realized from said assets, the said trustee shall be paid the sum of $250 for his services as such trustee, and in full settlement of his claim against said debtors as their attorney in relation to said logging business, and after the payment of all other necessary, proper and lawful expenses incurred in connection with the protection, collection and sale of said assets, all of which shall be approved by said agent, the balance of said funds shall be paid to said creditors *pro rata* in proportion to their just and lawful claims, and the surplus, if any, then remaining in the hands of said trustee shall be paid to said debtors.

"(4)    That said creditors, and each of them, hereby agree to accept the net proceeds realized by said trustee from the conversion of said assets into cash, in full payment of their, and each of their claims, and to *pro rate* the same as hereinbefore specified, but in the event of said cash thus realized, being more than sufficient to pay all said claims and expenses, the balance is to be paid to said debtors as hereinbefore provided.

"And it is specifically agreed, that in no event whatsoever whether this trust agreement be superseded or substituted by receivership or bankruptcy proceedings or other court proceedings or not, shall said creditors, or any of them, claim or receive any personal judgment against said debtors, or either of them, or any other property or assets belonging to said debtors, other than that connected with that of said business of logging, on account of their claims or any part thereof.

"Witness our hands and seals this 22d day of April, 1908."

This contract was signed by all the creditors and by Siegel and wife. The trustee therein named thereafter took charge of the estate, and proceeded to dispose of the same for the benefit of creditors. At the time of the trial, dividends amounting to forty-eight per cent of the claims had been paid to the creditors, and there was still some property to be disposed of. After the contract was entered into and up to the time this action was begun, Inglis Brothers had been

treated as creditors. They had signed the contract as creditors, and filed a claim against the estate for more than $9,600. Some objections were made by certain creditors to the amount of the claim of Inglis Brothers, but it was finally allowed at $9,619, and Inglis Brothers shared in the dividends which were paid. After these dividends were paid, this action was begun by the plaintiff, who was a creditor of Siegel and had notice of everything that was done under the contract.

One of the assigned claims sued upon belonged to the firm of which Tallie Jones, named in the contract, was a member. Mr. Jones, of course, was conversant with all the facts in regard to the connection of Inglis Brothers with Mr. Siegel. There is some evidence in the case that Inglis Brothers and Siegel were partners in certain logging operations, but as we read the record, there was no substantial basis for the claim that Inglis Brothers and Siegel were general partners, or that the claims sued on were for goods furnished upon the credit of such copartnership. These goods appear to have been furnished upon the sole credit of Mr. Siegel, and charged to him. But if we concede, for the purposes of this case, that there was sufficient evidence to go to the jury upon that question, and that Inglis Brothers and Siegel were general copartners, and that the goods were all furnished upon the credit of the copartnership, still the plaintiff cannot recover in this action, because, by the provisions of the contract quoted above, the creditors have satisfied their claims as against Siegel, and therefore have no recourse against the other partners. The contract recites:

"The said creditors and each of them hereby agree to accept the net proceeds realized by said trustee from the conversion of said assets into cash, in full payment of their, and each of their claims, and to *pro rate* the same as hereinbefore specified."

The rule is that a discharge of one partner from all liability on account of a partnership debt is a discharge of all

the partners.  *Gray's Ex'rs v. Brown*, 22 Ala. 262; *Rice v. Webster*, 18 Ill. 331; *Bonney v. Bonney*, 29 Iowa 448; *Harbeck v. Pupin*, 145 N. Y. 70, 39 N. E. 722; *Joy v. Wurtz*, Fed. Case, No. 7,555; *Willings v. Consequa*, Fed. Case, No. 17,767; *Hale v. Spaulding*, 145 Mass. 482, 14 N. E. 534, 1 Am. St. 475.  The respondent seeks to avoid this rule by saying that he was informed by Mr. Davis, at the time he signed the contract, that the contract would not release Inglis Brothers, and that the plaintiff was thereby misled.  We may assume that Mr. Davis did so inform the plaintiff, but this fact is disputed.  It was also conclusively shown that Mr. Davis, at the time this information was given, did not represent the copartnership, if one actually existed, nor did he represent Inglis Brothers, but represented the private interests of Siegel and wife, and so informed the plaintiff and all the creditors.  Of course, Inglis Brothers were therefore not bound by such representations, if they were made by Mr. Davis.  If the property was partnership property, the plaintiff was aware of that fact at the time he entered into the contract and took the property.  He was willing to take it in satisfaction of his claims.  The fact that later developments proved that the property was insufficient to pay his claims in full does not justify him in claiming recourse upon other partners.  It is clear, therefore, that the lower court should have directed a judgment in favor of the defendants.

The judgment must be reversed, and the cause remanded to be dismissed.

DUNBAR, C. J., PARKER, GOSE, and FULLERTON, JJ., concur.