[No. 62011-3.   En Banc.   July 20, 1995.]

SEAFIRST CENTER LIMITED PARTNERSHIP, *Respondent,* v. RONALD P. ERICKSON, ET AL., *Petitioners.*

*Edwards, Sieh, Hathaway, Smith & Goodfriend* by *Catherine Smith*, for petitioner.

*Beresford, Booth & Demarary* by *Richard Beresford* and *Eisenhower & Carlson* by *Bradley D. Fresia*, for respondent.

TALMADGE, J. — The present case originates in the alleged breach of a lease by a law firm for space in the Columbia Seafirst Center in Seattle. The lessor sought damages for breach of the lease from the partners of the law firm. When all but one of the partners settled with the lessor and lessor reserved its right to proceed against the remaining nonsettling partner, the final nonsettling partner sought dismissal on the principle that the release of one partner from liability releases all partners from liability on the lease contract.

As Washington has observed inconsistent rules in its case law on the release of a joint obligor under a reservation of rights, we now decide that the release of one partner from contractual liability under a reservation of rights does not release all other partners from liability. The decision of the Court of Appeals is affirmed.

## ISSUE

In an action for a partnership's breach of a lease, does the settlement between the lessor and a partner, in which the lessor reserves its rights against the non-settling partners, discharge all other partners from liability?

## FACTS

On March 8, 1985, Kargianis &. Austin, a Washington general law partnership, entered into a lease with Martin

Selig for space in the Columbia Seafirst Center. The lease commenced on August 1, 1985, and extended through July 31, 1995.

The partners of Kargianis & Austin at the inception of the lease were George Kargianis, P.S., Russell A. Austin, Jr., John I. Weston, Ronald P. Erickson, Bruce A. Wolf and Anthony W. Dougherty. Clerk's Papers, at 9. All the partners ultimately signed the lease except Weston, who left the partnership prior to executing the lease.

A significant lease term provided that there was limited personal liability on the lease for two of the partners:

> 51. LIMITATION. Any other provision herein notwithstanding, it is agreed by and between the parties that George Kargianis and Russell A. Austin, Jr. shall be personally liable on the instant lease agreement for the first five years and not thereafter.

Clerk's Papers, at 255. The record is silent as to what consideration Erickson and the other partners received, if any, for this release of Kargianis, P.S. (Kargianis) and Austin's personal liability in the second five years of the lease.[1]

In 1989, Martin Selig sold Columbia Seafirst Center to Seafirst Center Limited Partnership (Seafirst), and assigned to Seafirst his interest in the building's leases, including the Kargianis & Austin lease. Kargianis & Austin changed its name to Kargianis, Austin & Erickson (the Partnership) sometime after execution of the lease.

The Partnership had difficulty paying rent. On October 2, 1990, Seafirst filed suit against the Partnership and all its partners, seeking $218,460.82 (the amount of rental arrearage), and the rent due to accrue for the remainder of

---

[1] Paragraph 51 lists "George Kargianis" and not "George Kargianis, P.S." as the contracting party. Because "George Kargianis" did not sign the lease in his individual capacity, it appears, although we do not so hold, that "George Kargianis, P.S." should have been the party identified in ¶ 51. In their motion to dismiss pursuant to ¶ 51, Kargianis and Austin simply treated the party in ¶ 51 as the professional service corporation, and the court ultimately ordered the dismissal as to the professional service corporation. Seafirst did not object to the identification of Kargianis, P.S., as the party named in ¶ 51.

the lease, plus interest, and attorney fees.[2] Clerk's Papers, at 1-24.

Seafirst and the Partnership subsequently negotiated a settlement agreement. The Partnership would pay all rent due through October 31, 1990, and granted Seafirst a security interest in the Partnership's assets. The Partnership thereafter paid all amounts due on the lease through October 31, 1990, and that portion of the parties' lease is not at issue here. Corrected Br. of Appellant, at 8.

Because the lease commenced on August 1, 1985, and five years expired on July 31, 1990, Kargianis and Austin moved for dismissal, arguing that they were no longer personally liable pursuant to ¶ 51 of the lease. Despite Seafirst's vigorous opposition, on February 15, 1991, the trial court granted the motion, and Kargianis and Austin were dismissed from the case. Clerk's Papers, at 199-201. Seafirst then filed a notice of appeal to the Court of Appeals. Clerk's Papers, at 197-98. Seafirst did not litigate the appeal, however; in return for their agreement not to pursue attorney fees and costs, Seafirst entered into covenants not to sue with George Kargianis, Russell A. Austin, Jr., and Anthony W. Dougherty in April 1991. Clerk's Papers, at 460-61. Seafirst later entered into a covenant not to sue with Bruce Wolf. Clerk's Papers, at 335-36. Erickson was the only partner of the Partnership with whom Seafirst did not settle. As the only remaining defendant, Erickson moved for a summary judgment of dismissal on April 8, 1992, Clerk's Papers, at 386-401, contending that Seafirst's covenants not to sue constituted releases and that a discharge of one partner from all liability on a partnership debt discharged all partners.

Seafirst moved for summary judgment on the same day as Erickson, asking for past-due rent payments from the

---

[2]The complaint named George Kargianis in his individual capacity as a defendant, even though Kargianis had signed the lease only in his representative capacity as the agent for his professional service corporation. On October 11, 1990, just nine days after filing the complaint, Seafirst voluntarily nonsuited Kargianis in his individual capacity in response to Kargianis' CR 11 motion. Clerk's Papers, at 185.

Partnership for November 1, 1990, to December 31, 1991; prejudgment interest on each rental payment due; the difference between the Partnership's rent and the new tenant's rent from January 1, 1992, through July 31, 1995; tenant improvement expenses; and attorney fees. Clerk's Papers, at 402-18. Seafirst later responded to Erickson's motion by arguing that it had not released any of the defendants; it had merely entered into covenants not to sue, preserving rights against Erickson as the nonsettling defendant. Clerk's Papers, at 422.

The trial court granted Erickson's motion, denied Seafirst's motion, and awarded attorney fees to Erickson. Seafirst timely appealed to the Court of Appeals. In *Seafirst Ctr. Ltd. Partnership v. Kargianis, Austin & Erickson*, 73 Wn. App. 471, 866 P.2d 60 (1994) (hereinafter *Erickson*), the court reversed the summary judgment order dismissing *Erickson* and remanded the case for trial of Seafirst's damages from the breach of the lease agreement, as well as for a determination of Seafirst's attorney fees. The Court of Appeals' decision was based on the Restatement (Second) of Contracts §§ 294-95 (1981), which the court determined to be the more appropriate modern rules on the release of joint contractual obligors. Confronted with two distinct lines of cases on whether the discharge of a partner on a contractual obligation discharges all partners from liability, we agree with the Court of Appeals and adopt the modern rule that the settlement by one partner of a joint obligation does not discharge all partners, provided that rights are reserved against nonsettling partners.

### ANALYSIS

### A

### Nature of Erickson's Liability

The appropriate starting point for the court's analysis is the nature of Erickson's liability. The characterization of that liability is complicated by the fact that the liability on the lease is in the nature of a joint contractual obliga-

tion. There are special and distinct rules for the liability of a partner under Washington's Uniform Partnership Act (WUPA).

The Court of Appeals focused on the contractual aspect of the liability.[3] The Court of Appeals cited the Restatement (Second) of Contracts § 294 (1981) for the ancient[4] common law rule on release of joint obligors:

(1) Except as stated in § 295, where the obligee of promises of the same performance discharges one promisor by release, rescission or accord and satisfaction,

(a) co-promisors who are bound only by a joint duty are discharged unless the discharged promisor is a surety for the co-promisor[.]

The court said, "We agree, but only when the release contains no reservation of rights against the other obligors". *Erickson*, at 475. The court then modified the rule by adopting the Restatement (Second) of Contracts § 295:

(1) Where the obligee of promises of the same performance contracts not to sue one promisor, the other promisors are not discharged except to the extent required by the law of suretyship.

(2) Words which purport to release or discharge a promisor and also to reserve rights against other promisors of the same performance have the effect of a contract not to sue rather than a release or discharge.

(3) Any consideration received by the obligee for a contract not to sue one promisor discharges the duty of each other promisor of the same performance to the extent of the amount or value received.

---

[3]The Court of Appeals noted, however, that the Washington State Bar Association's, *Partnership Law and Practice Handbook* suggests that the rule for contractual obligations and partnership obligations is the same. *Erickson*, at 477.

[4]One treatise traces this rule of discharge to the 14th century. Glanville L. Williams, *Joint Obligations* 106 (1949). With respect to partnerships specifically, Story cites ancient case law for the proposition that "[a] release to one partner is a release to all, whether the claim released arise *ex contractu* or *ex delicto*". Joseph Story, *Partnership* 287 n.3 (7th ed. 1881).

*Erickson*, at 477 (quoting Restatement (Second) of Contracts § 295 (1991)).

■■ Erickson appropriately notes that WUPA draws a distinction between joint liability of partners for contracts, and joint and several liability for torts. RCW 25.04.150 states:

All partners are liable:

(1) Jointly and severally for everything chargeable to the partnership under RCW 25.04.130 and 25.04.140; and

(2) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract;

Whether characterized as a joint partnership obligation or a joint contractual obligation, however, the joint obligation of the partner on a lease is subject to the same rule for the discharge of a partner under a reservation of rights articulated in the Restatement (Second) of Contracts § 295.

## B
### The Rule of Discharge and Covenants Not To Sue

With regard to the discharge of a joint, nontort[5] obligor, Washington has observed two separate and distinct rules. In *Blodgett v. Inglis*, 63 Wash. 513, 517-18, 115 P. 1043 (1911), a case involving the joint obligation of partners, the court stated: "The rule is that a discharge of one

---

[5]Erickson also cited *Pinkham Lumber Co. v. Woodland State Bank*, 156 Wash. 117, 123-24, 286 P. 95 (1930), in support of his position. In that case, we state: "[W]e have with unanimity held that a release of one joint tort feasor is a release of all, whether the release be partial or in full, whether the amount of the recovery be unliquidated or measured, and whether the release to the one be with the express reservation that it shall not apply to the others". *See* RESTATEMENT (SECOND) OF TORTS § 885 (1979). *Pinkham* was a tort case, and the cited holding is no longer the law in Washington. By enacting RCW 4.22.060(2) in 1981, the Legislature rejected the common law rule releasing all joint tortfeasors when one is released:

A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides.

partner from all liability on account of a partnership debt is a discharge of all the partners".[6] No other Washington case has cited *Blodgett*, and we conclude that it is still good law.

In *North Pac. Pub. Serv. Co. v. Clark*, 185 Wash. 132, 52 P.2d 1255 (1936), however, we considered a case in which a seller of real estate released two of three purchasers who were jointly and severally liable to him. We held that the intent of the parties to the release governed. Because the releasor expressly reserved his rights against the non-released co-obligor, the co-obligor was not released. The language of the opinion implied that the rule of discharge was eliminated without regard to whether the liability was joint or joint and several in nature:

> The general rule is that a release by a creditor of one of several persons who are *jointly or jointly and severally obligated* is to discharge them all. But that rule is not applicable where, in the release, there is an express reservation of rights against the co-obligor or co-obligors. . . .
>
> . . . .
>
> . . . The equitable rule now prevails, and a release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation. Hence the legal operation of a release of one of two or more joint debtors may be restrained by an express provision in the instrument that it shall not operate as to the other.

(Italics ours.) *North Pac.*, at 134-35 (quoting 23 R.C.L. *Release* § 33, at 404 (1919)). *North Pac.* concerned joint and several obligors, rather than joint obligors as in the case at bar, but the reasoning applied to all joint obligors. Moreover, the *North Pac.* court adopted the rule that a

---

[6]Erickson earnestly argues there are "many differences between joint contract promisors and partners". Pet. for Review, at 14. He has not, however, directed us to any Washington partnership law that demands a different result in this case. With respect to the issues in this case, we can discern no principled difference between joint obligors who are partners and joint obligors who are not partners, except as to postjudgment execution issues, none of which is presently before us.

reservation of rights, in a release as well as in a covenant not to sue, preserves the creditor's rights against the remaining defendants.

Several more recent Washington cases, including *Johnson v. Stewart*, 1 Wn.2d 439, 96 P.2d 473 (1939), and *United Pac. Ins. Co. v. Lundstrom*, 77 Wn.2d 162, 459 P.2d 930 (1969), appear to abrogate the ancient rule of discharge in cases involving joint contractual obligations. In *Johnson*, the plaintiff brought an action on notes against joint obligors. The court declined to apply the ancient rule of discharge:

> We are in accord with the trend of modern authority, which tends to modify the strict common law rule by which joint contract obligors were often released from the burden of their contract by an inadvertent or ill advised release of one of their number. In connection with such questions as this, the modern rule that the intent of the parties, as expressed by their acts, and particularly by their writings, should receive a greater measure of consideration in determining contract rights, is clearly expressed in standard texts and judicial decisions. This principle tends to accomplish just and equitable results to a greater extent than did the strict rule of the common law.

*Johnson*, at 453. In *United Pac.*, this court adopted the reasoning of *Johnson* in a case involving personal indemnity agreements for a corporate debt. *See also White Pass Co. v. St. John*, 71 Wn.2d 156, 159, 427 P.2d 398 (1967); *Arndt v. Manville*, 53 Wn.2d 305, 308, 333 P.2d 667 (1958); Annotation, *Release of One of Several Joint or Joint and Several Contract Obligors as Affecting Liability of Other Obligors*, 53 A.L.R. 1420, 1422 (1928).[7]

Numerous legal commentators have argued for the com-

[7]*Accord New England Merchants Nat'l Bank v. Rosenfield*, 679 F.2d 467 (5th Cir. 1982) (Massachusetts law), *cert. denied*, 459 U.S. 1173 (1983); *Globe Constr. Co. v. Oklahoma City Housing Auth.*, 571 F.2d 1140, 1143-44 (10th Cir.) (Oklahoma law), *cert. denied*, 439 U.S. 835 (1978); *Sullivan v. Hopkins*, 435 F.2d 1128, 1132-33 (9th Cir. 1970) (California law); *Oak Brook Bank v. Hawthorne Bank*, 90 Ill. App. 3d 642, 413 N.E.2d 491 (1980); *Roe v. Citizens Nat'l Bank*, 32 Md. App. 1, 358 A.2d 267 (1976); *Lugena v. Hanna*, 420 S.W.2d 335 (Mo. 1967); *Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 410 A.2d 674, 19 A.L.R.4th 310 (1980); *Dinkle v. Denton*, 68 N.M. 108, 359 P.2d 345 (1961); *Joseph Melnick*

plete elimination of the rule of discharge even where rights are not reserved: "[The rule] appears as a survival from an older day when the law for the most part was less concerned, as we think, about giving effect to the intentions of the parties and less sensitive to considerations of fairness in the administration of justice". Harold C. Havighurst, *The Effect of a Settlement With One Co-Obligor Upon the Obligations of the Others*, 45 Cornell L.Q. 1, 1-2 (1959) (citing *Breen v. Peck*, 28 N.J. 351, 356, 146 A.2d 665, 668, 73 A.L.R.2d 390 (1958) ("The rule was evolved when metaphysics rather than justice was the dominant factor and obviously tends to defeat the fair expectations and intentions of the parties to the release")); *see also* 2 Samuel Williston, *Contracts* § 333, at 685-89 (3d ed. 1959); 4 Arthur L. Corbin, *Contracts* § 931, at 736 (1951) ("The rule that the voluntary release of any one of a number of persons obligated for a single performance discharges all the others operated as a trap into which many an obligee has fallen").

We do not completely eliminate the rule of discharge, but merely ameliorate its harshness by reaffirming our reasoning in *Johnson* and *North Pac.* We agree with the Court of Appeals in the policy rationale for this rule:

> Allowing the obligee to accept partial satisfaction promotes settlement, which the law strongly favors. Indeed, if Erickson's view is correct, one recalcitrant obligor could force a trial regardless of the desires of the other parties. There is no unfairness to the nonsettling debtor. Prior to the settlement Erickson was liable for the full amount of the Partnership's obligation. Because the law does not sanction a double recovery, his obligation is discharged pro tanto by the amount of the settlement. Contrary to the tort rule, any contribution rights Erickson may have are not eliminated.

(Footnotes omitted.) *Erickson*, at 476.

■ Seafirst expressly reserved its rights against the

---

Bldg. & Loan Ass'n v. Melnick, 361 Pa. 328, 64 A.2d 773 (1949); *Hooper v. Ryan*, 581 S.W.2d 237 (Tex. Civ. App. 1979); *see also* 4 Arthur L. Corbin, *Contracts* § 933, at 748-57 (1951); 66 Am. Jur. 2d *Release* §§ 35, 36, at 713-16 (1973); Restatement (Second) of Judgments § 50, at 40-41 (1982).

nonsettling partners in the covenants not to sue.[8] We believe the rule of *Johnson* and *North Pac.* is the better reasoned rule and will advance Washington's strong public policy of encouraging settlements.

## C

### The Personal Defense Exception

■ There is an additional reason why the rule of discharge does not release Erickson in this case: Seafirst has no cause of action against Kargianis and Austin. That is, Kargianis and Austin are no longer liable to Seafirst *as a matter of law*, not because of the covenant not to sue, but because of ¶ 51 in the lease. The trial court dismissed them from Seafirst's lawsuit on February 15, 1991. Those dismissals are the current law of this case. Erickson did not join Seafirst in opposing the dismissals, nor has he assigned error to the dismissals.[9] Under a well-settled exception to the ancient rule of discharge, the discharge of a joint obligor on the basis of a defense individual to that obligor does not release all other obligors.[10] Seafirst's claim

---

[8]Both covenants provide in relevant part:

"Seafirst reserves the right to further prosecute this action against other defendants named therein [apparently referring to Seafirst's lawsuit against the Partnership]. . . . The undersigned expressly reserves all rights of action, claims and demands against any and all other persons whomsoever not herein named.

Clerk's Papers, at 335, 460-61.

[9]Erickson's counsel correctly noted at oral argument, however, that the trial court did not certify the dismissals as final judgments pursuant to CR 54(b).

[10]*See, e.g., Balley v. Davis*, 75 Idaho 73, 267 P.2d 631, 633, 44 A.L.R.2d 575 (1954); *Tuttle v. Cooper*, 27 Mass. (10 Pick.) 281, 291 (1830); *Eastern Elec. Co. v. Taylor Woodrow Blitman Constr. Corp.*, 11 Mass. App. Ct. 192, 414 N.E.2d 1023 (1981); *Diamond Nat'l Corp. v. Thunderbird Hotel, Inc.*, 85 Nev. 271, 454 P.2d 13 (1969); 2 Samuel Williston, *Contracts* § 327, at 672 (3d ed. 1959) (judgment in favor of person having individual defense does not discharge the others from their obligations); 4 Arthur L. Corbin, *Contracts* § 937, at 776 (1951).

against Erickson survives the dismissals of Kargianis and Austin.[11]

This rule is in accord with common sense. If, because of their individual agreements with Seafirst, Kargianis and Austin are not liable to Seafirst, there is no sensible reason why Erickson should also escape liability if those partners were discharged. Likewise, if the other partners left the partnership before the defaults that led to Seafirst's action in the court below, so that they cannot be liable to Seafirst, there is no sensible reason why Erickson should escape liability on that account. Because the dismissed partners have personal defenses to Seafirst's claims, their dismissals do not discharge Erickson's liability to Seafirst even under the ancient formulation of the discharge rule.

## D

### Fairness to Erickson

Erickson urges that the Court of Appeals' decision is "manifestly unjust" to him, as he alone is left with liability; he must pursue the other partners and attempt to marshal partnership assets after his partners' departure. Pet. for Review, at 17-18. We disagree.

Erickson signed the lease that provided for the discharge of Kargianis and Austin's liability after the first five

---

[11]With respect to the other two partners who signed the lease, Dougherty and Wolf, Seafirst asserts that both of them had withdrawn from the partnership prior to the default that is the basis of the case at bar. Corrected Br. of Appellant, at 21-22. There is nothing in the record on appeal to corroborate Seafirst's assertion, although Erickson has not contested it. Nor is there anything in the record to indicate Dougherty's and Wolf's withdrawal from the Partnership relieved them of liability on the lease. If Seafirst's assertion is correct, it would appear, although we do not now so hold, Dougherty and Wolf are not liable to Seafirst as a matter of law. On remand, Erickson will have an opportunity to prove otherwise, if he wishes, in the trial court. In any event, because we hold that the covenants not to sue in this case do not discharge Erickson's liability to Seafirst, it makes no difference with respect to Seafirst's rights against Erickson whether Dougherty's and Wolf's liability to Seafirst was extinguished as a matter of law.

years.[12] He is bound by the contract he made.[13] With respect to the other two partners, Erickson has not advanced any arguments that would establish their liability to Seafirst. In the absence of anything in the record to the contrary, we cannot see how their dismissals from the lawsuit prejudiced Erickson.

Although Erickson understandably focuses only on what he perceives to be unfairness to him, the result he urges on this court would also be unfair to Seafirst. Seafirst would completely lose the benefit of the lease after the Partnership's default, be unable to recover damages Seafirst suffered from the cost it incurred to construct tenant improvements for the lessee that replaced the Partnership, and would be liable to Erickson for attorney fees and costs. Corrected Br. of Appellant, at 9-15.

■ Erickson claims it would be unfair and illogical to make him pursue his departed partners for what they may owe him under partnership law, because if they were still in the Seafirst lawsuit, he could cross-claim against them rather than initiate another lawsuit. The record does not reflect that he made cross-claims against his former partners when Seafirst initially sued the Partnership. We cannot conclude that if Erickson must initiate third-party actions against the other partners after remand he would be prejudiced to the extent we must allow the forfeiture of all of Seafirst's claims.

■ Our decision in this case does not leave Erickson bereft of remedies against his former partners. Erickson argues, without authority, that "The WUPA [Washington

---

[12]We note that, as a lawyer, Erickson was able to deal with his partners at arm's length, so that ¶ 51 did not result from oppression.

[13]Erickson asserts that the Court of Appeals was incorrect in assuming Kargianis and Austin had no liability on the lease after five years. This is a curious argument. Although the interpretation of ¶ 51 is not an issue on appeal, we note that the original lessor, Martin Selig, at his deposition, after noting that he is not a lawyer, said: "Well, it's a 10 year lease with two people being off it. So you take the two guys off of it and the rest of the guys are on it. . . . I don't think that is a legal interpretation. That is just what it says on the face". Clerk's Papers, at 106.

Uniform Partnership Act] simply does not contemplate that an individual partner may be forced to answer for a partnership debt and then seek contribution from the non-defendant partners". Supp. Br. of Pet'rs, at 9. On the contrary, the WUPA does indeed contemplate that one partner may have to pay a disproportionate share of a partnership debt. RCW 25.04.180(2) provides:

> The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct . . . of its business or property.

With RCW 25.04.180(2), unlike a tort case under RCW 4.22, a settlement by a partner does not foreclose the right of the nonsettling partners to secure contribution from the settling partner. Moreover, "if there are no firm assets with which to indemnify such partner, he has a right to compel his copartners to contribute". 1 Reed Rowley *Partnership* § 18(a), at 464 (2d ed. 1960) (citing cases). "In partnership, when there are no firm assets to reimburse a partner who has paid more than his share of the partnership obligations, the paying partner may recover from the other partners according to the proportionate share which each should have paid". *Graham v. Goodwin*, 850 S.W.2d 351, 355 n.2 (Mo. 1993). Erickson is free to advance his arguments about marshaling partnership assets and accessing individual partner assets in the collection phase of the case.[14]

---

[14]Erickson invites the court to adopt as the common law of this state certain portions of the Revised Uniform Partnership Act. Supp. Br. of Pet'rs, at 14-15. We decline to do so; partnership law is statutory and the province of the Legislature. Even if we did accept the invitation, the result here would be the same. Erickson wishes for us to dismiss Seafirst's claims against him because Seafirst has not demonstrated that partnership assets were exhausted in payment of the joint partnership debt. This misstates the rule Erickson advances. The rule Erickson cites is that a judgment creditor may not pursue the assets of individual partners until partnership assets are exhausted. Pet. for Review, at 11 (citing Revised Uniform Partnership Act § 307(d)). Adoption of that rule would not help Erickson here, as the rule relates only to postjudgment execution procedure, and not to liability.

CONCLUSION

We believe the time has come to modify the ancient rule of discharge. Although we doubt the rule ought to have further currency in our jurisprudence, today we only modify it, as we have resolved the present matter on grounds that do not require its complete abrogation. We therefore declare our reasoning in *Johnson v. Stewart*, 1 Wn.2d 439, 450-53, 96 P.2d 473 (1939), to be the law of Washington. We specifically overrule *Blodgett v. Inglis*, 63 Wash. 513, 115 P. 1043 (1911), as well as other cases that are inconsistent with our present abrogation of the rule of discharge when a joint obligor settles a claim based on joint liability, and the plaintiff reserves rights against the nonsettling joint obligors.

We affirm the decision of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this decision.

DURHAM, C.J., DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, and ALEXANDER, JJ., and UTTER, J. Pro Tem., concur.

Reconsideration denied September 7, 1995.